PRADO *v.* ESTATE OF RÍO.

APPEAL from the District Court of Arecibo.

No. 323.—Decided June 24, 1909.

TACIT LEGAL MORTGAGE—PARAPHERNAL PROPERTY—DELIVERY OF SAID PROPERTY TO THE HUSBAND.—In the case at bar, in order to prove the delivery of the paraphernal property from the wife to the husband, a deed was presented whereby the former sold said property to a third person, in which deed her husband limits himself to grant the marital permission required by law. *Held:* That this deed does not demonstrate the delivery to the husband of the proceeds of the sale.

Third Person—Tacit Legal Mortgage—Paraphernal Propety.—In this case a power of attorney made by the plaintiff on the 10th of October, 1869, in favor of a third person, in order that the latter might represent her at a meeting of creditors, was submitted as evidence. In this document the plaintiff sets forth the following, namely, ''the exclusive right which she had to the property of her aforesaid husband on acocunt of the property which she brought to the marriage, and her right to recover with absolute preference.'' This power of attorney was executed before the predecessor in interest of the defendant estate, who was a witness thereof, and for this reason the plaintiff charges him with a knowledge of her preferential right for her paraphernal property and prays that he may not be considered as a third person. *Held:* That the fact that the document was executed before him and that he was a witness thereto, does not deprive any one of his capacity as a third person, unless it be shown by means of some act or admission on his part that he had a knowledge of the legal tacit mortgage existing in favor of the wife; and that the statement made in said power of attorney does not affect the defendant who had acquired the property before the date thereof.

The facts are stated in the opinion.

*Mr. López Landrón* for appellant.

*Mr. Alvarez Nava* for respondents.

Mr. Justice Wolf delivered the opinion of the court.

The question involved in this appeal relates to a tacit legal mortgage. María de la Encarnación Prado, widow of Suro, brought a suit against the Succession of Alonso del Río, naming in the complaint the persons who formed said succession. The complaint sets up in substance that the complainant inherited from her parents and her brother a share in the plantation "Encarnación" belonging to the heirs of Prado, which share amounted to $7,279.39 Spanish currency, and that during her marriage her legitimate husband, Juan Suro, received the said share or coownership for the purpose of administration by a real and express delivery, the said $7,279.39 being a part of the total value of the farm amounting to $130,000; that on March 28, 1862, before the notary, Lajara, the complainant being subject to the power of her husband, and upon his counsel and consent, sold her coownership of the aforesaid plantation to one Pablo Soliveras for the said sum of $7,279.39, which she stated that she had received before the execution, without explaining whether she

received it herself or through her legitimate husband who represented her in all her acts and contracts; that said proceeds or total value was received by Juan Suro as administrator of the conjugal partnership and as the natural legitimate representative of his wife, and for attending to the expenses and debts of the same conjugal partnership; that her husband Juan Suro with this money and some other money acquired the farm "María" which is described in the complaint; that by this sole fact and from the moment in which the husband, Juan Suro, took charge of said proceeds the legal and tacit mortgage was constituted on all his property, and expressly upon the said property "Maria," to answer for the return entire of the said sum or its value with its profits and revenues; that some years afterward, in the month of March, 1869, by a public deed Juan Suro made a private agreement with all his creditors and in that agreement, without reservation by each and every one of them, the privileged and special preference of the complainant was acknowledged for the said sum of $7,279.39, it being agreed unanimously, that if by any event or unforeseen circumstance the agreement of Suro with his creditors should not be complied with, the paraphernal privilege of the complainant should not be nullified or destroyed; that the said agreement of Juan Suro with his creditors was never fully complied with in each and all its clauses, and that for that reason the privileged mortgage of the wife survived; that Alonso del Río, without such legal and tacit mortgage of the complainant ever having been extinguished, subrogated, reduced, postponed nor coverted into a special mortgage, acquired for himself and his heirs the said plantation "María" mortgaged as it was (so alleges the complainant), by the legal and tacit mortgage in the sum of $7,279.39 and without such plantation ever having been redeemed or relieved of such encumbrances; that Juan Suro, the husband of the complainant died in Vega Baja on December 13, 1871; without having restored to the complainant the value of the said paraphernal property, and from the date of said death

the complainant has never received from Alonso del Río, the possessor and purchaser of the alleged mortgaged plantation "María," the alleged principal sum nor the legal interest on the same, nor has she received said sum from anybody else; that upon the death of Juan Suro the succession did not have nor does it to-day have any property with which to pay the amount of said paraphernal claim; that from the year 1871, and thereafter, the complainant has been taking measures to recover which have proved fruitless; that 30 years have not elapsed since, with respect to the old legislation, the mixed action arose; that recently Alonso del Río died and that his succession accepted the inheritance. The complainant then goes on to name the persons composing the succession, and claims that said succession might be adjudged to pay to the complainant the sum of $7,279.39, the value of the legal mortgage existing on the plantation "María."

The defendants answered admitting the execution of the deed of March 28, 1862, before the notary, Lajara, setting up that in that deed the complainant acknowledged having received the price previous to the execution, and that in that deed the husband only appeared to give his consent which the law requires as an indispensable requisite; also admitting that Alonso del Río acquired the property which formed part of the plantation "María," and also that Juan Suro died in Vega Baja on December 13, 1871, and practically denying all the other facts of the complaint. The answer also set up that Juan Suro died in 1871, leaving a piece of property by the name of "María"; that when Juan Suro died his property was subject to a mortgage of $8,675; that eight years after the death of the husband the complainant acknowledged that she owed to Joaquin Julia, the widow and heir of José Borrell in whose favor the said mortgage was executed, the sum of $25,473.84; that portions of the two farms forming the plantation "María" were sold in payment of taxes and were acquired by Alonso del Río, some directly and others by purchase from the other bidders, and that also

in the same year the creditor, Joaquina Julia, to recover the aforementioned sum, issued an execution against the two aforesaid farms which were adjudged to her in payment, deducting the portions which had been sold to satisfy the taxes; this execution was consented to and authorized by the complainant herself according to an agreement or contract in which she acknowledged that she received $2,000; that in the same year, namely, 1888, Mrs. Joaquina Julia, by deed of the 19th of December, before Notary de Torres sold said property to Alonso del Río, reduced as it was from 250 to 185 acres by reason of the sale for the taxes. And for a third defense the answer sets up the fact that the action had prescribed.

At the trial on June 11, 1907, in order to prove the delivery from the wife to the husband, a deed was presented by which María Aureliana de la Encarnación Prado, the plaintiff here, sold her private property to Pablo Soliveras, in which deed her husband limits himself to grant the marital permission required by law, and, therefore, this deed does not demonstrate the delivery to the husband of the proceeds of the sale. On February 10, 1869, the plaintiff made a power of attorney to some third person in order that the latter may represent her at a meeting of creditors. In this document the plaintiff sets forth the following, namely, the exclusive right which she had to the property of the aforesaid husband on account of the property which she brought to the marriage and her right to recover with absolute preference. She executed this deed before Alonso del Río who is now defendant and who was a witness of this power of attorney and by reason of his acting in these capacities she charges him with a knowledge of her preferential right for her paraphernal property, and that he may not be considered as a third person or innocent purchaser for value without notice. This was the earliest date at which the plaintiff made known her intention. The court below did not give much force or credence to the testimony of the wife by reason of the facts of the assertion in the power of attorney having been made at

a time when her husband was making arrangements with his creditors.

We do not think that the proof in this case shows the express delivery which the law requires. (See decision of this court in the case of *Amy* v. *Amy,* of June, 1909.) We agree with the court below, moreover, that with respect to third persons this assertion that Mrs. Suro made could only take effect from the date of its being made, namely, February 10, 1869. The fact that it was executed before him and that he was a witness of the same, does not deprive him of his capacity as a third person. Such an act is merely a formal one and the law requires some act or admission on his part which would show a knowledge of the alleged legal tacit mortgage existing in favor of the wife of Juan Suro. To this effect is the decision of the Supreme Court in the case of *Amy* v. *Amy, supra.* This property was acquired by Alonso del Río, as the evidence shows, partly by purchase at the said auction sales for failure to pay taxes, and partly from the execution sale made on the mortgage which was executed by Juan Suro in favor of José Borrell on May 11, 1867. The property was so acquired before 1869, and before it could be charged with a tacit legal mortgage some more definite knowledge on the part of the defendant must be proved.

We find no error in the judgment of the court below and the same must be affirmed.

*Affirmed.*


Chief Justice Hernández and Justices Figueras and Mac-Leary concurred.

Mr. Justice del Toro took no part in the decision of this case.